We will now hear argument in the last argued case of the day, which is United States v. Martinez-Robos and Rosa Acuna. What is your position if we were to conclude that maybe the government made this concession because it thought they might be going to incriminate one another, but then if it turns out that they didn't incriminate one another in that hypothetical situation, for your purposes, do they still – is it problematic that the government said they would give a limiting instruction but didn't? In other words, is the fact that they don't actually need to give a limiting instruction, does that resolve it for us or does somehow the promise – to go back to Judge Smith's initial question – does somehow the promise still hold? Well, let me be clear that I think they still needed to give a limiting instruction. But if you disagree with that, I do think the promise is important and may change the circumstances. Is there case law on that that you can point us to or that the promise still holds? Notwithstanding, understanding you don't agree that they didn't need to give it. Right. I don't know that I have one. I mean, as I had indicated, Salazar-Martinez is probably the best – the most closely analogous case where they promised to give an instruction and then didn't follow through on the promise at the trial. I mean, your assumption for the question is that they didn't need to give the limiting instruction. I think everybody agrees they did need to give the limiting instruction at Salazar-Martinez. But that's what I would rely on for the promise issue with Salazar-Martinez. And what was defense counsel's obligation? If the government said they would request the limiting instruction, they didn't do that. At what point was defense counsel required to request that instruction or make an objection? Well, we believe they did the right thing by making the objection. And, again, this comes back to it's not counsel's burden to ask for the limiting instruction, because how is a defense counsel supposed to know exactly how the government wants to use the evidence? Like right now, did they use it for the truth of the matter asserted, or did they not use it for the truth of the matter asserted? I mean, it's the government who needs to – especially when they promise to seek the appropriate limiting instructions, they're the ones that need to make the request. What defense counsel's job is is to object, and that's what defense counsel did. He objected at the time that the statements were being admitted, and that's all he had to do. Then it's the government's burden, particularly when they make a pretrial promise that they're going to seek limiting instructions, to seek the appropriate one. If they didn't want to use it for the truth of the matter asserted, they should have said to the court, Your Honor, we would ask that you give a limiting instruction that the statements aren't being offered for the truth, and that would have solved the problem most likely. But they didn't do that, and also that they're only being admitted against the co-defendant. But the government didn't keep its promises, and defense counsel did what it needed to do by objecting. I did want to just briefly address the photos of the alleged methamphetamine on the co-defendant's phone. In this case, the government also promised before trial that they would introduce evidence that my client was in those photos, but they never introduced evidence, and I think they now concede that Mr. Martinez-Robos was in the photos of the suspected methamphetamine or minerals or basalts or white alum or whatever it was. There's just no evidence that Mr. Martinez-Robos ever possessed those drugs or whatever they were, ever imported them. There's just no evidence that he engaged in that other act. The district court clearly let the evidence in as an other act. It was a 404B evidence. It wasn't an inextricably intertwined theory, and I think this court's case law amply demonstrates that the inextricably intertwined theory does not apply. And if you add the prejudice from that error with the post-arrest statements error, and this was the problem with the joint trial in the case, the prejudice starts to accumulate when you look at the joint trial. The district court should have stuck with its guns. Its initial decision was to sever. The government didn't even oppose the severance initially, and that's the way the case should have been tried, for it to be fair to Mr. Martinez-Robos. Do you want to save any of your time for rebuttal? It's up to you. Okay, I will. I will, Your Honor. Thank you. Very well. All right, Ms. Conway. May it please the Court, Your Honors. Marissa Conway on behalf of Rosa Acuna. I just want to take what my co-counsel was talking about and kind of fill in some of the gaps in terms of the 404B and the photos on Ms. Acuna's phone. And I think where we start is maybe what we did know, and really all we knew was there was a photo or two on her phone, and that's it. What we didn't know is what was in that photo, in that bag, when exactly those photos were taken, if Ms. Acuna knew what was in the photo, if she'd ever possessed what was in the photo. And when we take all of that information, what we don't know, it leaves us with the question of really how was this probative of anything? How did we have sufficient evidence that a crime had even occurred? And when we go to the second prong of 404B and we look at the timing of this, we see the government concedes that although they put in a bunch of photos at trial, they essentially concede they only had time stamps and metadata for two of those photos, stating they were taken on January 5th, which I then highlight in my brief that there's also information that one of those photos the government says was taken on January 5th also shows them that the metadata was taken on January 6th. Counsel, let me ask you this. As I understand it, some of these photos were taken in the midst of other texts and other pictures that were apparently taken in connection with the planning the charge defense. What's your response to that? Well, they kind of argue that these photos are embedded within this series of events, but I don't think that they've adequately demonstrated that this is part of a scheme or anything. I mean, you have a couple of photos in the center. You also have Ms. Acuna's version of what she said. The government kind of limits it, but it goes beyond her saying these salts were just used for a douche. She understood the medical purposes behind these. She said, look, it's an anticoagulant. When you shave, you can use it for bleeding. You can use it after giving birth for firming skin. There's a multitude of purposes that she testified to. And her brother, who the government does not dispute exists, was diabetic. The government never disputed that as well. And so she basically, in communication with her brother, was going to provide these bath salts to meet his diabetic needs and his bleeding. So there's a logical explanation maybe why this is embedded in the fact that she's going down to visit her brother and provide these bath salts. I think also the other thing that the court needs to look at in terms specifically as to Ms. Acuna, when you look at this case, she basically, she was the passenger in this vehicle. She was not the registered owner. The government did not offer any proof at trial that she had access to the keys while in Mexico, that she was driving that vehicle while in Mexico. And then upon arrest, she did not admit that she knew the drugs were in the vehicle. Instead, she denied knowledge. And a lot of the statements that she made were corroborated at trial. You know, she went to see her brother. That was corroborated. Or her son, excuse me, her son. That was corroborated, that he was, in fact, in the hospital. She was going back with the daughter or her, excuse me, her boyfriend's, her son's girlfriend's daughter was in the vehicle. And they were returning to school for the purpose of addressing this truancy issue. And so she gave a plausible explanation. So when you take the evidence of the photos of this unknown substance, and you take the statements without the limiting instruction, it had a huge effect on the jury's verdict in this case. And it definitely was error and requires reversal. And with that, I would submit, and I guess I would defer that last minute to my co-counsel for rebuttal. Let me ask my colleague whether I either have additional questions for Ms. Conroy. Very well. So, Mr. Coleman, your counsel has given you a little extra time, but we're going to give that after the government has made his argument. So please proceed for the government. Good morning, Your Honors. Good morning. Andrew Chang for the United States. May it please the Court. I want to start where my colleague left off and discuss the 404B issue a little bit. The district court did not abuse its discretion in admitting the pictures of apparent methamphetamine from Ms. Acuna's phone. These pictures were relevant to her knowledge because it showed that she was with a substantial amount of distributable drugs just two days before she was caught with a substantial amount of distributable drugs. Counsel, as I understand it, the picture showed something other than cocaine. It might have been meth or something like that. Does that have any bearing on the admissibility of the photos of those bags of whatever? No, it doesn't. This Court has held in prior precedent, and I'll allude to United States v. Vought, that possession and distribution of another type of substance in the past is relevant to prove knowledge of distribution of a substance currently. It's not really the identity of the substance that is relevant. It's the activity. And in this case, the picture showed that Acuna was with a large amount of a substance that looked like methamphetamine. And the government didn't just tell the jury that it was methamphetamine. It had witnesses come up and testify that there was a 15-year experienced drug agent who testified that it was his opinion that that substance was methamphetamine, and it was packaged in a way that was consistent with narcotics trafficking. And there was another government expert who came, and he testified about what methamphetamine looked like, and it matched the substance that was depicted in the photos. So we are to understand that the picture of what your expert said was like methamphetamine showed that Ms. Acuna was familiar with basically drug trafficking, the way things were packaged and so on. It doesn't matter what was in there. This is something she's familiar with. Otherwise, why would she take a picture of it? Is that what we're supposed to understand? That's correct, that it was relevant to her knowledge, that she knew that she was engaged in drug trafficking. And I want to spend a little bit of time talking about Mr. Martinez too. Counsel, let me ask you sort of a follow-up question on that. So if she had pictures on her cell phone of her standing next to a pile of cash, you know, $100 bills, you know, smiling, is your argument sort of that that too could have – assuming this was meth, or if it was meth, that even though it wasn't cocaine, the same way if you were standing next to a bunch of money or something, I assume the government would have made the argument that we don't know that these were drug proceeds, but this is evidence that the jury could consider as to whether or not she was around some sort of drug operation. That's correct. If there were pictures – Can I ask you this? So I thought that was right. Did she get an opportunity to argue this, the whole bath salts, that it was something else to the jury? Was that – did she have an opportunity to argue that? Well, she did. She came up and she testified under oath, and she told the jury that it was a – they were pictures of, you know, minerals that had health effects that she used, and that she was sending those pictures to her brother because her brother wanted to start a business distributing that product. That was her story to the jury. So the jury had an opportunity to consider both sides' argument and decide what they thought it was, whether they thought it was meth or whether they thought it was salts. That's right. And, you know, I think it was quite clear that she was not telling the truth to the jury. The district court found that she had lied under oath. That's what the district court applied, an enhancement for obstruction of justice. So, yes, the jury had a chance to hear her story. But, you know, relating to Mr. Martinez, I don't want to ignore him. The jury also saw that Mr. Martinez, even though he was not in the photos, they were able to tie him to the photos of the drug packages with the metadata that was found in Acuna's phone. One day prior to the time that she took the pictures, she sent a text message to Mr. Martinez saying, in two hours they will confirm whether we are going. And two hours later she starts taking pictures of Mr. Martinez's ID, multiple pictures of his SUV with close-ups of the tire showing the size of the tires, and pictures of a spare tire placed in different configurations in the trunk of the vehicle. The next day she continues to document with pictures what appears to be a concerted effort to place a spare tire in the vehicle, and it depicts a man holding a spare tire next to the vehicle. And the government was able to show that this man was Martinez because he had a distinctive looking hand, and it was for sure Mr. Martinez's vehicle. As she took those pictures, she sent them to her brother, who then responded by text message, well, we need the measurement. She and her brother then have a 10-minute conversation, and then about 15 minutes after that is when she takes the photographs of the methamphetamine. And 20 minutes after that is when Mr. Martinez texts her, hey, I have new tires, they're installing it. The next day they go to Mexico, and the day after that is when 50 pounds of cocaine was hidden in a spare tire underneath the vehicle that Mr. Martinez owned for a long time, in a spare tire that he claimed that he didn't know about, even though evidence showed that he was texting Ms. Acuna about spare tires and that he was shown by the vehicle with a spare tire. So basically the metadata in the pictures allowed the government to, if you will, have a timeline so that we just add certain elements to tie together the text, the phone calls, the pictures, is that right? That's correct, and the metadata was quite clear. The pictures, the jury saw the metadata associated with the camera of the phone, and the camera of the phone, the metadata had a very specific notation called capture time, and the capture time was what depicted the date and the time that the camera was used to take those pictures. And the government also had the case agent come up and talk about the timestamps relative to those phones, so the jury had a very clear timeline. We turn to a different subject, which is the defendant's argument that the government made a promise that when they moved to have the cases tried together, that they would request a limiting instruction on the co-defendant's statements. Excuse me. That seems to have some teeth to it, that if the government makes a representation to the defendants that they should follow it. Why should we conclude that that's not important and that it doesn't matter that the government didn't ask for a limiting instruction? Well, I'd like to get into that, Your Honor, and I think we have to look at the progression of what the government had told the court. In early hearings and in early briefings, the government did tell the court that it anticipated asking the court to issue a limiting instruction, but it appears that during that time, you know, there was a lot of evidence in this case, and it appears that during that time, the government was still evaluating the evidence, and it looks like they originally had anticipated offering the statements in such a way that some hearsay would come in, whether it was, you know, one person referring to the other. But as time came closer to trial, the government told the court that it would scrub that information out of the statements that it would give to the court, and the government made that statement in ER 241, and I'm talking about Martinez's ER. It said that it would scrub that information out from the post-arrest statements such that no hearsay statements would come in, and the district court understood that. The district court made a finding that the government was not going to introduce hearsay, and that was one of the primary reasons why it rejoined the defendants for trial. So I don't think that there was any broken promise. I think that there was an initial, you know, government thought that it was going to use the statements in one way, but then it endeavored and committed to not using it in that way. Well, I understand Ms. Acuna's reply brief to argue that the government waived the argument that the statements were not introduced for the matter asserted. How do you respond to that? Well, I don't think that there was any waiver. You know, the government told the court that it wasn't going to offer hearsay statements. It didn't do that, and I'm not aware of any case that says when a government tells the court something and does it at trial that that argument is waived on appeal. What the government did was very clearly tell the jury that both defendants are not telling the truth. They're lying. As to Mr. Martinez, it told the jury that his entire post-arrest narrative was made up. As to Ms. Acuna, it told the jury that nothing, she can't tell a story that is true. And it wasn't just the arguments that the prosecutor made in closing. They actually introduced evidence showing that they were giving false testimony, you know, or at least were giving false statements to the investigators. You know, Mr. Martinez told investigators that he went down to Mexico so that he could have a mechanic repair dents from the outside of his car. Well, the government introduced evidence of all these pictures of the car in which it's all dented up. There's no repairs. It also introduced, you know, Mr. Martinez also told investigators that he had no idea that there was a spare tire underneath the vehicle that he owned. But, you know, the government showed the jury that, you know, this was a car that had a fully functional alarm system, and Mr. Martinez was pictured holding a spare tire just a couple days before the trip. So I appreciate this recitation because it's helpful, but in response to my colleague's question, you're telling us that there really wasn't any promise anymore because the promise, if you will, was based upon what the government thought it was going to have to present, but then it concluded it didn't have to do that. It explained that to the court. The court said, okay, we're going to join these trials again. At that point, did the defendants say, no, no, no, you made us a promise. You've got to carry forward with your original promise, if you will. What happened? Well, the defense didn't say that the government had to do that. I think the defense understood that the government was going to proceed in a way that no hearsay statements would come in, and I think that's why they didn't make any objection when the statements did come in because they knew that there was no hearsay purpose to it. And this is another reason why I think this issue should be evaluated under the plain error standard because they did not ask the court for a limiting instruction, which Salazar-Martinez requires. Okay. They argue that that's your burden given the, in quotes, promising before. What's your response to that? Well, my response would be, you know, I think the government told the court that it wasn't going to introduce hearsay, and they didn't. And so I don't think that there was a broken promise. But, you know, I think to get back to Judge Smith's point from the beginning, to the extent that there was any error, there was no prejudice on the part of well, they can't show that they were prejudiced because they can't show that the jury would have acquitted them if these statements didn't come in. Can I change the subject just for a minute? On the McFadden issue, how much weight should we put on the fact that the district court used the Ninth Circuit's model jury instructions? Well, I think that's certainly relevant to show that the error was not so obvious that it's plain. You know, McFadden concerned a different part of the drug statutes, the 841 statute, which is similar to 960 but not identical. And, you know, it's been seven years since McFadden has been on the books. And the model jury instructions from this court are still the same since pre-McFadden, on 960 at least. And those are the same instructions that the district court used in this case. So I would argue that if there was any error, then it wasn't plain. But more importantly, the defendants can't show prejudice. They can't show that a jury would have acquitted them had the district court instructed the jury that the defendants had to know that they were smuggling a substance that was on the federal schedules as opposed to a prohibited drug. And the reason why they can't show that is, you know, they lean pretty heavily on Acuna's testimony that she believed that, you know, the substance on her phone was a mineral. But I think based on the totality of the evidence, it's very difficult, I think quite implausible for a jury to find that they would have gone through such extensive steps preparing, finding a spare tire, concealing it in a very difficult location. If they were planning on smuggling a mineral, which in fact Acuna testified that she could have purchased it legally in the United States. So there was no prejudice as to the McFadden issue. I'm going to take you back to the prior issue. I think this is an accurate way to characterize this. One way to characterize the difference between you and your colleagues is that you're saying that there was a built-in implicit part of your promise that you would ask for the assembly instruction, that you would ask for it if it was necessary, kind of, it seems like. And maybe their position, I don't want to put words in your mouth, maybe their position is more, well, the government didn't say that. The government just said they would do this, and they didn't do it. And so maybe more of a categorical promise that it wasn't. What I want to know is if we were to conclude that it was more of a categorical promise or if we were to, then does the government still prevail in the sense, it kind of goes to the question I asked them earlier, which is, let's say you made a promise, and it's more of a categorical promise, it doesn't have this implicit condition in it, but you don't follow through with the promise, but we also determine that you didn't need to follow, like you had no independent legal obligation to follow through with the promise. What do we do with that? Do we say, well, you made the promise, therefore there was error, or do we say you made the promise, but you didn't have to follow through with it, so there was no error? You kind of see my— Yeah, and I think the latter is correct because I think, you know, the court evaluates evidence based on how it was actually presented to the jury, not how the parties discussed how it would potentially be presented to the jury. And, you know, the whole thing about the limiting instruction is a limiting instruction is really only necessary if, you know, the jury could look at the evidence and potentially consider it for an improper purpose. But there was just no potential for that in this case. There was no potential that the jury could have considered the evidence improperly because the prosecutors argued pretty strenuously that, you know, these are false statements. They provided evidence to show that they were false statements. So I don't think that there's any need for the court to hold the government— assuming that the government did make a critical promise, there's no need for the court to hold the government to that promise that it didn't need to keep. Well, what would be the effect of the promise? So this testimony is being admitted. The government, according to defendants, should have requested a limiting instruction that the statements of one co-defendant can't be considered against the other. I mean, isn't that the upshot of Sosa-Martinez? If one of the co-defendants had said the other person was responsible, you couldn't consider that against that defendant. So what happens here when the statements are not directly incriminating? They're about where they went and what they did, and neither one of them says the other went and got drugs loaded into the car. So what limiting instruction would apply there? I don't think any limiting instruction would apply, and I think that this court should be guided by the Supreme Court's precedent in Anderson and this court's prior precedent in Candoli. In Anderson, the Supreme Court held that if an evidence can be introduced to show that it was false and it wouldn't violate the hearsay rule because the whole purpose for the exclusion of statements that are hearsay is the lack of opportunity to cross-examine the speaker. But there's no reason to cross-examine a speaker on the truth of his statement if the party proffering the statement contends that it's false. And I think Candoli is even closer on point because in that case, this court said that the prosecutors properly introduced a false exculpatory statement of an accomplice to the police in order to show that it was inconsistent with the defendant's out-of-court statement to the police in order to show that both sides were providing false, was lying, essentially. And I think this court can be guided by Supreme Court and prior circuit precedent to find that no limiting instructions were needed and that these statements were properly admitted. So we're almost out of time, but can you address briefly, I think it was Martinez-Robles Counsel who said, yeah, but not all of them were admitted just to show for the inconsistency, but I think he used the example of Acuna's testimony. I don't know if this actually – I don't recall whether this testimony was actually offered, so I don't know if it was a hypothetical or if it was actually an example from the case, but the example of giving testimony that the romantic relationship was – there was more to the romantic relationship versus less to it and that that would have been solicited by the government or offered by the government for the truth of that as opposed to. So what if some of it does go to the truth? Well, I think the reference to the romantic relationship was such a minor part of the case that it really didn't make any difference. The prosecutor did mention it, but he mentioned it in a fleeting moment that was really just a couple of seconds of argument in the entire context. So I think in the entire context, that comment really couldn't have made a difference in the outcome of this case. And I assume you would say that that had nothing to do with the portion of the, if you will, post-arrest testimony that was the gravamen of the problem in the first place, right? That's right. The portions of the testimony that they compared to each other was that – were they driving a car that was white or were they driving a car that was blue? That was a huge conflict. Did he give the car to a mechanic named Jose Falcone or did they give the car to the brother? So that had nothing to do with how the prosecutors argued it. Other questions by my colleagues? Very well. Thank you. Thank you, Your Honor. And we would ask the court to respectfully affirm their convictions. Very well. Mr. Coleman, you're going to get a little bit of the time that Ms. Conroy gave to you. Do we have that all totaled up for him, the two of them? Mr. Coleman and then Mr. Zimmerman. All right. I'll just give them two minutes then, okay? Very well. Please proceed. Starting with the Salza-Martinez issue, there were two potential limiting instructions that could have been given. Number one was that you can't use the statements of the co-defendant against the other co-defendant. Or, I mean, the government is saying they weren't offered for the truth. Well, if that's the case, then you need the limiting instruction that these statements aren't being offered for the truth. But neither limiting instruction was given. I mean, the government never mentioned that they weren't being offered for the truth ever in the district court. But if that's what they wanted, then that was a limiting instruction that should have been given. The government keeps on saying, no, hearsay was introduced. Yes, hearsay was introduced because you didn't specify with an instruction that the statements weren't being offered for the truth. But was that necessary in order to meet the standard of whether it was being offered for the truth of the matter being presented? Yeah, and in every case that I know, when the government seeks to offer a statement, not a court statement, and it's admitted not for truthful purposes, the district court instructs the jury, this isn't being offered for the truth. The jury isn't supposed to simply guess, oh, they must not be offering this for the truth. I mean, the jury needs to be instructed. I've never seen a case where a court says, well, the jury was never given the instruction, but it was OK. Anyhow, we've cited cases that have reversed where the limiting instruction hasn't been given. That type of limiting instruction hasn't been given. This was a categorical promise. In addition, even as you get up to the trial, the government is promising that they will seek limiting instructions. That's what the district court relied on that when it rejoined the cases. And then when Mr. Martinez's counsel objected, based on hearsay and prudent grounds at trial, the district court said to the government, are we going to proceed as you represented pre-trial? And they said yes. They never said, no, no, no, no, these statements are not being offered for the truth. They confirmed their promise in the middle of the trial. OK. Let me just ask my colleagues whether they have additional questions. We've used up the rebuttal time, but any questions for either? I'm sure there's lots more we could talk about, but we appreciate the argument of all counsel in the case. And the case just argued is submitted, and the court stands in recess for the day. All rise.
judges: SMITH, BADE, VANDYKE